**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ———————————————— | ) |
| MICA SAINT-JEAN, <u>et al.</u>, | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
|     v. | )    Civil Action No. 08-1769 (RWR) |
| | ) |
| DISTRICT OF COLUMBIA, | ) |
| | ) |
|     **Defendant.** | ) |
| ————————————————) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

The plaintiffs, three Haitian former employees of defendant District of Columbia Public Schools Division of Transportation ("DOT"), brought claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 <u>et seq.</u>, and District of Columbia statutory and common law alleging that a DOT supervisor illegally required the plaintiffs to pay kickbacks in order to secure overtime assignments.  They have moved for leave to file a second amended complaint adding two claims under Title VII, 42 U.S.C. § 2000e <u>et seq.</u>, and substituting the District of Columbia ("D.C.") for DOT as a defendant.[1]  DOT argues that adding the new claims would be futile because the Title VII claims are time-

———————————————

[1] The proposed second amended complaint continued Michelle Smith as a defendant.  However, the complaint was dismissed against Smith after the motion for leave to amend was filed. <u>Mica Saint-Jean, et al. v. D.C. Pub. Sch. Div. of Transp.</u>, Civil Action No. 08-1769 (RWR), 2011 WL 4443349 (D.D.C. June 20, 2011). DOT does not challenge the plaintiffs' proposal to substitute D.C. as a defendant, and D.C. will be substituted as the defendant.

-2-

barred and insufficiently pled.[2]  Because the plaintiffs timely

filed amply pled Title VII claims, the motion to amend will be

granted.

<u>BACKGROUND</u>

The plaintiffs' proposed second amended complaint adds Title

VII claims for discrimination and retaliation on the basis of

national origin (Pls.' Mem. in Supp. of Pls.' Mot. for Leave to

File Second Am. Compl. ("Pls.' Mem."), Ex. 1 ¶¶ 188-203), and

alleges the following facts.  Plaintiffs Mica Saint-Jean, Marie

Dorlus, and Guerline Bourciquot are Haitian immigrants.  (<u>Id.</u>

¶¶ 13-15.)  Their former supervisor, Michelle Smith, refused to

assign Haitians "highly coveted" overtime hours unless they paid

her illegal kickbacks.  (Pls.' Mem., Ex. 1 ¶¶ 2, 23, 192.)

Beginning in June of 2004 and December of 2005, Saint-Jean and

Dorlus respectively paid Smith between $75 and $150 per pay

period in exchange for overtime work.  (<u>Id.</u> ¶¶ 30, 34-35.)  They

stopped paying her in late summer or September of 2007 when

Bourciquot informed them that the payments were illegal.  (<u>Id.</u> ¶¶

43-44; <u>see also</u> Def.'s Opp'n, Ex. 1 at 6, 11.)  Smith retaliated

against the plaintiffs until at least March 26, 2008, refusing to

---

[2] The defendants also argue that harassment allegations by
one plaintiff in paragraphs 130 through 142 of the proposed
second amended complaint are preempted by the Comprehensive Merit
Personnel Act ("CMPA"), D.C. Code § 1-601.01, <u>et seq.</u> (2001).
The allegations in those paragraphs do not comprise the entire
factual basis for either new Title VII claim, and no discussion
of CMPA preemption is warranted.

-3-

assign the plaintiffs overtime hours, selectively enforcing DOT

policies against them, "issuing repeated and unnecessary

warnings[,]" and suspending Bourciquot without pay.  (Pls.' Mem.,

Ex. 1 ¶¶ 5, 45-47, 57, 62-63, 193.)

In November or December of 2007, Saint-Jean and Dorlus

reported Smith's illegal kickback scheme and retaliatory acts to

the Mayor's office, the Office of the Inspector General ("OIG"),

and the FBI.  (Id. ¶ 6.)  Bourciquot accompanied Saint-Jean and

Dorlus to the OIG and disclosed the scheme to DOT Assistant

Manager Janice Waters in March of 2008.[3]  (Id. ¶¶ 6, 56.)

Between July 10 and 16, 2008, "Hastings-Carey"[4] issued four

written warnings and a written reprimand to each of Saint-Jean

and Bourciquot for allegedly refusing a directive and padding the

clock.  (Id. ¶¶ 64-65.)  On July 17, 2008, the plaintiffs

discussed Smith's discrimination against Haitians with DOT's

Transportation Administrator, David Gilmore.  (Id. ¶¶ 4, 77.)

They traveled to meet Gilmore again on July 18, 2008, though only

Saint-Jean was admitted to Gilmore's inner office.  (Id. ¶ 79.)

---

[3] It was "one week after Bourciquot informed Waters of
Smith's unlawful kickback scheme [that] Smith suspended
Bourciquot from March 24 [through] 26, 2008, without pay, citing
unspecified 'time padding.'"  (Pls.' Mem., Ex. 1 ¶ 57.)

[4] The proposed second amended complaint provides neither
"Hastings-Carey's" first name nor position.  The plaintiffs
describe only warnings Hastings-Carey and Washington issued --
not the "unnecessary warnings" that contributed to Smith's
"campaign of retaliation[.]"  (Pls.' Mem., Ex. 1 ¶¶ 5, 193, 201.)

-4-

On July 21, 2008, Bourciquot and Dorlus were suspended without
pay for five days for failure to "call to report they would be
late [to work] on July 18th." (<u>Id.</u> ¶ 86.)  On July 29, 2008, DOT
notified Bourciquot and Dorlus of their "proposed termination[s]"
for insubordination to an immediate supervisor.  (<u>Id.</u> ¶¶ 97, 99.)
Their effective date of termination was August 14, 2008.  (<u>Id.</u>
¶ 100.)  DOT placed Saint-Jean on a ten-day administrative leave
for insubordination on September 10, 2008, with notice that she
would be terminated effective September 24, 2008.  (<u>Id.</u> ¶ 114.)

On September 17, 2008, the plaintiffs filed complaints with
the Equal Employment Opportunity Commission ("EEOC"), alleging
discrimination and retaliation on the basis of national origin.
(<u>Id.</u> ¶¶ 105, 118; <u>compare</u> Def.'s Opp'n, Ex. 1 at 1, 5, 10.)  The
following month, they filed this action alleging claims under the
FLSA and D.C. law, and filed their first amended complaint in
January of 2009.  The plaintiffs received right-to-sue letters
from the Department of Justice on June 11, 2009, "indicating that
they had exhausted their administrative remedies and had the
right to institute civil action under Title VII of the Civil
Rights Act of 1964."  (Pls.' Mem., Ex. 1 ¶¶ 106, 119.)

Plaintiffs moved two weeks later to amend the amended
complaint, adding two Title VII claims challenging as
discriminatory the kickback requirement and their subsequent
termination from DOT.  DOT argues that amendment is futile

-5-

because the plaintiffs failed to plead timely their
discriminatory kickback claims and failed to plead sufficient
facts to state Title VII claims.

## DISCUSSION

Plaintiffs may amend a complaint a second time with either
the consent of the adverse party or leave of court.  Fed. R. Civ.
P. 15(a)(2).  Leave should be given freely, but not
automatically, "when justice so requires."  Id.; see also LaPrade
v. Abramson, Civ. Action No. 97-10 (RWR), 2006 WL 3469532, at *3
(D.D.C. Nov. 29, 2006) (quoting Foman v. Davis, 371 U.S. 178, 182
(1962)).  The defendant "bear[s] the burden of demonstrating why
leave should not be granted."  LaPrade, 2006 WL 3469532, at *3
(citation omitted).

Futility is one ground for denying leave to file an amended
complaint.  Foman, 371 U.S. at 182.  Futile amendments "restate[]
the same facts as the original complaint in different terms,
reassert[] a claim on which the court previously ruled, fail[] to
state a legal theory or could not withstand a motion to dismiss."
Pietsch v. McKissack & McKissack, 677 F. Supp. 2d 325, 328
(D.D.C. 2010) (citations omitted); accord Cornish v. Dudas, 715
F. Supp. 2d 56, 68 (D.D.C. 2010).  The plaintiffs' proposed
amendments do not merely recapitulate the original complaint, and
the amendments do set forth a new legal theory.  Accordingly, the
motion may be denied only if "'the proposed pleading would not

-6-

survive a motion to dismiss.'" In re InterBank Funding Corp.

Sec. Litig., 629 F.3d 213, 215 (D.C. Cir. 2010) (quoting Nat'l

Wrestling Coaches Ass'n v. Dep't of Educ., 366 F.3d 930, 945

(D.C. Cir. 2004)).  In considering a Rule 12(b)(6) motion to

dismiss, a court "assume[s] all the allegations in the complaint

are true (even if doubtful in fact)" and "must give the

plaintiff[s] the benefit of all reasonable inferences derived

from the facts alleged." Aktieselskabet AF 21. November 2001 v.

Fame Jeans Inc., 525 F.3d 8, 18 (D.C Cir. 2008) (internal

quotation marks and citation omitted); accord Simba v. Fenty, 754

F. Supp. 2d 19, 22 (D.D.C. 2010).  To prevail, the plaintiffs'

amendments must "contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face."

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal

quotation marks and citation omitted).

I.   LIMITATIONS PERIOD

DOT argues that the plaintiffs' Title VII claims based on

kickbacks paid before December 1, 2007 are barred by Title VII's

300-day statute of limitations.[5]  (Def.'s Opp'n at 3-4.)  "Before

bringing suit in federal court, [Title VII] plaintiffs[] . . .

must exhaust their administrative remedies by filing an EEOC

---

[5] DOT appears to have miscalculated the 300-day period.
November 22, 2007 is the date 300 days before the September 17,
2008 date on which the plaintiffs filed their charges with the
EEOC.

-7-

charge and giving that agency a chance to act on it." Dahlman v.
AARP, 791 F. Supp. 2d 68, 75 (D.D.C. 2011) (internal quotation
marks and citation omitted).  "In the District of Columbia, an
EEOC charge must be filed within 300 days of the date of the
alleged discrimination." Tucker v. Howard Univ. Hosp., 764 F.
Supp. 2d 1, 6 (D.D.C. 2011) (citing Griffin v. Acacia Life Ins.
Co., 925 A.2d 564, 568–69 n.13 (D.C. 2007) (explaining that the
300-day deadline derives from the "worksharing" arrangement
between the EEOC and the District of Columbia Office of Human
Rights)).  The plaintiffs filed their EEOC charges on
September 17, 2008.  (Pls.' Mem., Ex. 1 ¶¶ 105, 118.)
Accordingly, the statute of limitations bars plaintiffs from
challenging under Title VII any discrete acts of discrimination
predating November 22, 2007.  See Lee v. D.C., 733 F. Supp. 2d
156, 160 (D.D.C. 2010); see also Nat'l R.R. Passenger Corp. v.
Morgan, 536 U.S. 101, 114 (2002) (describing discrete acts of
discrimination as including "termination, failure to promote,
denial of transfer, or refusal to hire").

DOT does not dispute that its suspensions without pay and
terminations of the plaintiffs all fall within the limitations
period.  However, DOT argues that the plaintiffs were last
"compelled to pay" Smith illegal kickbacks in September of 2007
and that "the 300 calendar days expired" on July 28, 2008.
Francis v. D.C., 731 F. Supp. 2d 56, 68 (D.D.C. 2010).  (Def.'s

-8-

Opp'n at 3.)   DOT cites no authority for the proposition that the

limitations period runs from the latest date that plaintiffs

capitulate to an employer's discriminatory demands.   Instead,

"[t]he deadline [for filing an EEOC charge is] 'three hundred

days <u>after the alleged unlawful employment practice occurred</u>."

<u>Francis</u>, 731 F. Supp. 2d at 67 (emphasis added).   The kickback

scheme as alleged involved more than simply illegally extracting

kickbacks.   It also involved denying plaintiffs opportunities to

work extra hours after they stopped paying kickbacks.   (Pls.'

Mem., Ex. 1 ¶¶ 5, 44, 63.)   Drawing all reasonable inferences in

the plaintiffs' favor, the kickback scheme appears to have

persisted at least through July of 2008.   The scheme -- like

DOT's suspensions and terminations -- therefore falls within the

limitations period.   (<u>Id.</u> ¶¶ 42, 114, 193.)   The plaintiffs acted

promptly after receiving their right-to-sue letters to add their

Title VII claims, and those claims are timely filed.   <u>See</u>

<u>Dahlman</u>, 791 F. Supp. 2d at 75 ("[O]rdinarily receipt of a notice

of right-to-sue letter is a condition precedent to the initiation

of a[] . . . Title VII . . . action in court.") (citation

omitted).   (<u>See also</u> Pls.' Mem., Ex. 1 ¶¶ 106, 119.)

II.  DISCRIMINATION CLAIM

     "Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e <u>et seq.</u>, as amended, prohibits employment discrimination

on the basis of race, color, religion, sex, or national origin."

-9-

Ricci v. DeStefano, 129 S. Ct. 2658, 2672 (2009).  "The two
elements a plaintiff must plead for a viable claim of
discrimination under Title VII are that '(i) the plaintiff
suffered an adverse employment action (ii) because of [his] race,
color, religion, sex, or national origin.'"  Winston v. Clough,
712 F. Supp. 2d 1, 10 (D.D.C. 2010) (quoting Brady v. Office of
the Sergeant at Arms, 520 F.3d 490, 493 (D.C. Cir. 2008))
(internal quotation marks omitted).  Suspensions without pay and
terminations clearly constitute adverse employment action.
(Pls.' Reply in Supp. of Mot. For Leave to File Second Am. Compl.
("Pls.' Reply") at 3; Def.'s Opp'n at 4.)  See also Halcomb v.
Office of Senate Sergeant-at-Arms of U.S. Senate, 563 F. Supp. 2d
228, 247 (D.D.C. 2008) (collecting cases holding that
disciplinary warnings do not constitute adverse employment
actions).  The denial of overtime also can constitute an adverse
employment action.  Broska v. Henderson, 70 F. App'x 262, 267-68
(6th Cir. 2008); accord Bell v. Gonzales, 398 F. Supp. 2d 78, 97
(D.D.C. 2005).[6]  Here, the plaintiffs have alleged that they were

---

[6] In Bell, 398 F. Supp. 2d at 97, the court stated that "a
lost opportunity for overtime (assuming plaintiff has proven
there were opportunities to work overtime) is only an adverse
employment action where the trier of fact could reasonably
conclude that plaintiff in the past sought opportunities for
overtime pay or it was otherwise known to defendant that
plaintiff desired such opportunities."  Accord Houston v. SecTek,
Inc., 680 F. Supp. 2d 215, 221 (D.D.C. 2010).  Here, the
plaintiffs have alleged both that overtime opportunities existed
and that they actively pursued those opportunities.  (See, e.g.,
Pls.' Mem., Ex. 1 ¶¶ 42, 59, 63.)

-10-

uniquely required to pay illegal kickbacks in exchange for
overtime work because they were Haitian.[6]  (Pls.' Mem., Ex. 1
¶¶ 37, 192.)  They have adequately pled that the kickback scheme
constituted unlawful discrimination.  See Winston, 712 F. Supp.
2d at 10.

III. RETALIATION CLAIM

     "The elements of a claim of retaliation are that the
plaintiff engaged in a statutorily protected activity, the
employer treated the plaintiff adversely, and a causal connection
existed between the two."  Winston, 712 F. Supp. 2d at 11.  The
plaintiffs allege that they engaged in statutorily protected
activity by reporting the kickback scheme to authorities within
and outside of DOT.  (Pls.' Mem., Ex. 1 ¶¶ 6, 56, 77.)  At a
minimum, DOT was aware of the plaintiffs' disclosures to its
Assistant Manager and Transportation Administrator.  (See id.;

---

     [6] The plaintiffs appear to suggest that the suspensions and
terminations were prompted less by the plaintiffs' status as
Haitian immigrants than by their decision not to participate in
the kickback scheme.  (See, e.g., Pls.' Reply at 3 ("[S]imilar
disciplinary action was not taken against non-Haitian or Haitian
employees participating in the kickback scheme."); see also Pls.'
Mem., Ex. 1 ¶¶ 70-73 (describing Hastings-Carey's decision to
"ignore[] Saint-Jean and . . . sign in three African-American
employees and two Haitians who were participating in the kickback
scheme.").)  However, at the pleading stage, the plaintiffs'
allegation that they faced kickback demands because they were
Haitian and continuing adverse consequences when not acceding to
the demands states a claim even if not an unambiguous prima facie
case.  See Brady, 520 F.3d at 493 ("At the motion to dismiss
stage, the district court cannot throw out a complaint even if
the plaintiff did not plead the elements of a prima facie
case.").

-11-

compare Def.'s Opp'n at 8-9 (denying knowledge of plaintiff's

protected activity).)   Just four days after the plaintiffs

reported the scheme to Gilmore on July 17, 2008, DOT suspended

Bourciquot and Dorlus without pay for five days.  (Pls.' Mem.,

Ex. 1 ¶ 86.)   Eight days after the suspensions began, DOT

notified Bourciquot and Dorlus of their "proposed termination[s]"

and set August 14, 2008 as their effective date of termination.[7]

(Id. ¶¶ 97, 99-100.)   Courts have accepted "mere temporal

proximity between an employer's knowledge of protected activity

and an adverse employment action as sufficient evidence of

causality to establish a prima facie case . . . [where] the

temporal proximity [is] very close."  Clark Cnty. Sch. Dist. v.

Breeden, 532 U.S. 268, 273-74 (2001) (internal quotation marks

and internal citation omitted) (holding that a 20-month lag was

too long to infer retaliatory intent).   Here, the allegedly

retaliatory employment decisions occurred within days and weeks

of the plaintiffs' protected activity.   The plaintiffs therefore

have sufficiently pled their Title VII claim for retaliation.

CONCLUSION AND ORDER

    The plaintiffs have timely filed and sufficiently pled their

Title VII claims.   Accordingly, it is hereby

---

[7] On September 10, 2008, DOT placed Saint-Jean on a ten-day
administrative leave and gave her notice that she would be fired
effective September 24, 2008.  (Id. ¶ 114.)

-12-

ORDERED that the plaintiffs' motion [49] for leave to file a second amended complaint be, and hereby is, GRANTED.  The Clerk is directed to file as plaintiffs' Second Amended Complaint Exhibit 1 to plaintiffs' memorandum in support of their motion for leave to file a second amended complaint.  It is further

ORDERED that the District of Columbia be, and hereby is, SUBSTITUTED as the defendant.

SIGNED this 21st day of February, 2012.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge