UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
MICA SAINT-JEAN, et al.,        )
                                )
        Plaintiffs,             )
                                )
        v.                      )   Civil Action No. 08-1769 (RWR)
                                )
DISTRICT OF COLUMBIA,           )
                                )
        Defendant.              )
_____)
```

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Mica Saint-Jean, Guerline Bourciquot, and Marie Dorlus have brought claims against defendant District of Columbia ("the District") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, <u>et seq.</u>, the D.C. Whistleblower Protection Act ("WPA"), D.C. Code § 1-615.51, <u>et seq.</u>, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, <u>et seq.</u>, and local statutory and common law arising from an alleged scheme which required them to pay kickbacks to their supervisor at the District of Columbia Public Schools Division of Transportation ("DOT") in order to receive overtime assignments. The District moves to dismiss or for summary judgment claiming that the DOT was under a receivership at the time thus entitling the District to immunity. Because the District has failed to show that the DOT was under a receivership during the relevant time period, the District's motion will be denied.

BACKGROUND

I.  ALLEGATIONS

The plaintiffs allege the following facts, many of which are set forth in Saint-Jean v. District of Columbia, 844 F. Supp. 2d 16, 18-20 (D.D.C. 2012).  Plaintiffs Saint-Jean, Bourciquot, and Dorlus, all Haitian immigrants, worked at a DOT school bus terminal.  They were denied the opportunity to work overtime hours unless they paid illegal kickbacks to their former supervisor, Michelle Smith, the Terminal Manager.  2d Am. Compl. ¶¶ 2, 13-15, 24, 192.  Saint-Jean and Dorlus each paid Smith between $75 and $150 per pay period to obtain overtime assignments.  Id. ¶¶ 30, 34-35.  When they stopped paying Smith in September 2007, Smith retaliated by refusing to assign them overtime hours, selectively enforcing DOT policies against them, "issuing repeated and unnecessary warnings[,]" and suspending Bourciquot without pay.  2d Am. Compl. ¶¶ 5, 45-47, 57, 62-63, 193.

A group of Haitian DOT employees discussed Smith's scheme with DOT's Transportation Administrator, David Gilmore, in October 2006.  As a result, Smith was suspended for six weeks. Smith resumed her scheme after she returned.  Id. ¶¶ 4, 38-42. In November or December 2007, Saint-Jean and Dorlus reported Smith's illegal kickback scheme and retaliation to the Mayor's office, the Office of the Inspector General, the Office of the

Attorney General, and the FBI.  Id. ¶ 6.  Bourciquot disclosed the scheme to DOT Assistant Manager Janice Waters in March of 2008.  Id. ¶ 56.  Between July 10 and 16, 2008, two supervisors issued four written warnings and a written reprimand to each of Saint-Jean and Bourciquot for allegedly refusing a directive and padding the clock.  Id. ¶¶ 64-65, 184-85.

The plaintiffs discussed some of Smith's discrimination against Haitians with Gilmore on July 17, 2008.  Id. ¶ 77.  The following day, Saint-Jean told Gilmore that Smith accepted bribes in exchange for paying employees for hours not worked, and that Smith let her boyfriend use DOT buses for personal purposes.  Id. ¶¶ 79, 82.  DOT Deputy Terminal Manager Michael Roberts suspended Bourciquot and Dorlus without pay on July 21, 2008, for five days, for an alleged failure to "call to report they would be late [to work] on July 18th," id. ¶¶ 86-87, and directed a security guard to escort them off DOT property later that afternoon.  Id. ¶ 183.  On July 29, 2008, DOT notified Bourciquot and Dorlus of their "proposed termination[s]" for insubordination to an immediate supervisor.  Id. ¶¶ 97, 99.  Their effective date of termination was August 14, 2008.  Id. ¶ 100.  DOT placed Saint-Jean on a ten-day administrative leave for insubordination on September 10, 2008, with notice that she would be terminated effective September 24, 2008.  Id. ¶¶ 114-115.

II.   MOTION

The District now moves for judgment on the pleadings or for summary judgment, contending that DOT was under a receivership during the relevant time period and that that insulates the District from liability, or, alternatively, that the District should be granted the "same judicial immunity that would protect the receiver if he were named as a defendant in this litigation."   Def.'s Mot. for J. on the Pleadings or, in the Alternative, for Summ. J. ("D.C. Mot.") at 2.   The plaintiffs oppose, arguing primarily that DOT was not under a receivership during the relevant period.   Pl.'s Opp'n to Def.'s Mot. for J. on the Pleadings ("Pl.'s Opp'n") at 1.

## DISCUSSION

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings."   Fed. R. Civ. P. 12(c).   A Rule 12(c) motion is granted if there are no material facts in dispute and the movant is entitled to judgment as a matter of law.   Stewart v. Evans, 275 F.3d 1126, 1132 (D.C. Cir. 2002).   "In considering a motion for judgment on the pleadings, the Court should 'accept as true the allegations in the opponent's pleadings' and 'accord the benefit of all reasonable inferences to the non-moving party.'"   Id. (quoting Haynesworth v. Miller, 820 F.2d 1245, 1249 n.11 (D.C. Cir. 1987)).

- 5 -

When "matters outside the pleadings are presented to and
not excluded by the court" on a Rule 12(c) motion, "the motion
must be treated as one for summary judgment under Rule 56."
Fed. R. Civ. P. 12(d).  "[E]ven if the parties have not been
provided with notice," so long as "they have had a reasonable
opportunity to contest the matters outside the pleadings such
that they are not taken by surprise," a Rule 12(c) motion may be
treated as one for summary judgment.  Tolbert-Smith v. Chu, 714
F. Supp. 2d 37, 41 (D.D.C. 2010) (citing Highland Renovation
Corp. v. Hanover Ins. Grp., 620 F. Supp. 2d 79, 82 (D.D.C.
2009)).

Summary judgment may be granted when the moving party
demonstrates that there is no genuine issue as to any material
fact and that the moving party is entitled to judgment as a
matter of law.  Fed. R. Civ. P. 56(a).  In considering a motion
for summary judgment, a court is to draw all justifiable
inferences from the evidence in favor of the nonmovant.  Cruz-
Packer v. District of Columbia, 539 F. Supp. 2d 181, 189 (D.D.C.
2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255
(1986)).  The relevant inquiry "is the threshold inquiry of
determining whether there is the need for a trial -- whether, in
other words, there are any genuine factual issues that properly
can be resolved only by a finder of fact because they may
reasonably be resolved in favor of either party."  Anderson, 477

U.S. at 250.  A genuine issue exists where the "evidence is such
that a reasonable jury could return a verdict for the non-moving
party[,]" as opposed to where the evidence is "so one-sided that
one party must prevail as a matter of law."  Id. at 248, 252.

I.   LIABILITY OF ENTITIES UNDER A RECEIVERSHIP

    Entities under a receivership may be shielded from direct
or vicarious liability for actions undertaken by the receiver.
Fantasia v. Office of the Receiver of the Comm'n on Mental
Health Servs., Civil Action No. 01-1079 (LFO), 2001 WL 34800013,
at *5-6 (D.D.C. Dec. 21, 2001).[1]  The District contends it is
entitled to judgment on the pleadings or summary judgment
because under a consent order issued in Petties v. District of
Columbia, Civil Action No. 95-148 (PLF) (D.D.C. June 25, 2003),

---

    [1] The D.C. Circuit has not yet ruled whether and to what
extent an entity under a receivership order can be held liable
for the acts committed while it is under a receivership order.
See Fantasia at *5 ("There is a shortage of case law addressing
the liability of an entity placed under a receivership for the
actions of the receiver.").  Other courts have turned to
principles of agency law to determine the scope of liability.
See, e.g., id. (assessing who controlled the receiver to
determine if the District of Columbia could be held liable for
the acts of a receiver); Canney v. City of Chelsea, 925 F. Supp.
58, 63-66 (D. Mass. 1996) (resolving the question of "which
entity bears ultimate liability for the receiver's torts" by
turning to common-law agency principles).  However, it is
unnecessary to analyze agency principles to resolve the
District's motion because the District does not rely on agency
principles to absolve itself of liability and, as is explained
below, DOT was not under a receivership order during the
relevant time period.

ECF No. 1118 ("Petties Consent Order"),[2] DOT was placed under a full receivership.  See Mem. of P. & A. in Supp. of D.C. Mot. ("D.C. Mem.") at 2.  The District further argues that, because DOT was under a receivership during the relevant time, the District cannot be held liable -- either directly or vicariously -- for actions taken by the receiver "because as a matter of law the District lacked the power and authority to manage or operate the entire DOT while David Gilmore was serving as Transportation Administrator."  Id. at 7-10 (citing Fantasia, 2001 WL 34800013; Wise v. District of Columbia, Civil Action No. 03-310 (SBC), 2005 WL 818622 (D.D.C. Apr. 8, 2005); and Lerner v. District of Columbia, Civil Action No. 00-1590 (GK), 2003 WL 21384645 (D.D.C. May 27, 2003)).

Though the District acknowledges that David Gilmore was appointed as a "Transportation Administrator" rather than as a receiver under the Petties consent order, it argues that "this is a distinction without a difference, because the orders issued in *Petties* make clear that Mr. Gilmore functioned as a receiver for DOT."  Def.'s Supp. Mem. in Supp. of Its Mot. for J. on the Pleadings or, in the Alternative, for Summ. J. ("D.C. Supp. Mem.") at 2; id. at 2-3 (quoting Morgan v. McDonough, 540 F.2d 527, 535 (1st Cir. 1976)) ("[T]he consent order makes clear that

---

[2] The Petties Consent Order also appears as an attachment to the District's errata.  3/14/14 Errata, ECF No. 138, attach. 1.

the purpose of the order was to substitute the Court's authority
(exercised through the judicially appointed Transportation
Administrator) 'for that of the elected and appointed officials'
who were running DOT."); Reply to Pls.' Opp'n to Def.'s Mot. for
J. on the Pleadings or, in the Alternative, for Summ. J. ("D.C.
Reply") at 7 n.5 (arguing that "the consent order makes clear
that Mr. Gilmore was the judicially appointed receiver for DOT,
even though the parties agreed to refer to Mr. Gilmore as the
'Transportation Administrator,' rather than the 'receiver'").
However, the District's conclusory assertion that a
transportation administrator is the same as a receiver sheds no
light on whether the District can be held liable for actions
undertaken while Gilmore was the Transportation Administrator.
See D.C. Mem. at 7-10 (stating that Gilmore is a receiver and
arguing that the District should not be held liable for actions
undertaken during a receivership); D.C. Supp. Mem. at 2-3
(same).  The District's analysis assumes that Gilmore was a
receiver, see, e.g., D.C. Mem. at 6-14 (relying solely on case
law about receivers without discussion of the potential
distinctions), and makes only cursory arguments about why
Gilmore is a receiver, see, e.g., D.C. Supp. Mem. at 2-3
(asserting that Gilmore's title of Transportation Administrator
instead of receiver is a "distinction without a difference");

D.C. Reply at 7 n.5 (arguing that Gilmore performs the same function as a receiver).

It is not readily apparent from the consent order, however, that the position of Transportation Administrator was intended to be identical to that of a receiver.  See Petties Consent Order at 1.  Initially, Judge Friedman appointed a Transportation Administrator in 2000, and "[t]his Administrator was a DCPS employee who reported directly to the Superintendent of Schools."  Petties v. District of Columbia, Civil Action No. 95-0148 (PLF), 2006 WL 1046943, at *1 (D.D.C. Apr. 21, 2006). As Judge Friedman explained the factual history,

> [b]ased on the continuing failure to improve the transportation function under the leadership of a DCPS Administrator who reported to the Superintendent . . . plaintiffs filed a Motion to Place the Transportation System into Receivership.  Defendants vigorously objected to plaintiffs' request, and the issue was heavily litigated. . . . Ultimately, rather than proceed with oral argument and submit the plaintiffs' motion for the Court's consideration, defendants agreed to the appointment of an independent Transportation Administrator to 'manage, supervise and assume responsibility for' the transportation operations of DCPS.  The parties filed a proposed Consent Order implementing their agreement, and plaintiffs withdrew their motion to appoint a receiver. . . .  [T]he Court approved the Consent Order and appointed David Gilmore . . . as the Transportation Administrator for DCPS special education[.]

Id.  Notably, though Gilmore's appointment as Transportation Administrator was precipitated by the plaintiffs' motion to place DOT under a receivership, the plaintiffs withdrew that

motion as part of the consent order.  Id.  Further, Judge
Friedman later explained that "[b]y agreeing to the Consent
Order, defendants averted the substantial possibility that the
Court would grant plaintiffs' motion to put DOT into
receivership, stripping DCPS entirely of its authority to manage
the transportation function."  Id. at *5; see also Winder v.
Erste, 511 F. Supp. 2d 160, 166 n.3 (D.D.C. 2007) ("Plaintiff
has described the DCPS Transportation Division as being in
receivership at various times.  Judge Friedman's order indicates
that his appointment of a Transportation Administrator in 2000
and again in 2003 was distinct from receivership." (citations
omitted)), rev'd in part on other grounds, 566 F.3d 209 (D.C.
Cir. 2009).

The Petties Consent Order also indicates that the
Transportation Administrator was not intended to have the same
powers as a receiver.  Gilmore was not granted complete
authority or control over DOT.  Compare Petties Consent Order at
6 ("After consultation with the Superintendent, the
Transportation Administrator shall have the power and authority
necessary, and consistent with applicable law and this Order, to
carry out his duties and responsibilities.") with Dixon v.
Barry, 967 F. Supp. 535, 555 (D.D.C. 1997) (granting the
plaintiff's motion for appointment of a receiver and giving the
receiver "[a]ll powers over the [Commission on Mental Health

Services] currently exercised by the Commissioner of Mental
Health Services, the Director of Human Services, and the Mayor
of the District of Columbia").  The consent order also made
clear that "[t]he Transportation Administrator shall have the
same immunity provided to District of Columbia public
officials," Petties Consent Order at 14, whereas a court-
appointed receiver may be entitled to limited quasi-judicial
immunity, see Fantasia, 2001 WL 34800013, at *2-3 ("A receiver's
immunity is . . . only protection for acts within the scope of
his authority that are basic and integral parts of the judicial
function[.]" (internal quotation marks omitted) (citing Sindram
v. Suda, 986 F.2d 1459, 1461 (D.C. Cir. 1993))); see also infra
at 14-18 (discussing immunity).  This suggests that the
Transportation Administrator position was intended to be
analogous to a District official, rather than to a specialized
judicial official.  Finally, since the plaintiffs withdrew their
motion to appoint a receiver, see Petties Consent Order at 14,
it would be anomalous to view the consent order as granting the
request for appointment of a receiver when the plaintiffs
withdrew their request.  Ultimately, while the District asserts
that Gilmore's title is irrelevant, his title, the Petties
consent order, and the circumstances surrounding Gilmore's
appointment indicate that Gilmore was not appointed as a
receiver.  Because the Petties consent order did not appoint

Gilmore as a receiver, the District cannot claim that it is shielded from liability on the basis that Gilmore was a court-appointed receiver.[3]

Even if Gilmore's position of Transportation Administrator was functionally the same as that of a receiver -- a proposition that the District has not proven -- the District fails to show that it nevertheless cannot be held liable for the actions undertaken during Gilmore's tenure.  The District fails to cite a single case where the organization under the leadership of a functional equivalent of a receiver was held not liable.  See generally D.C. Mem.; D.C. Supp. Mem; D.C. Reply.  All three of the cases that the District cites, see D.C. Mem. at 7-10, involve the District's Commission on Mental Health Services which was under a court-ordered receivership imposed in Dixon, 967 F. Supp. at 555.  See Wise, 2005 WL 818622, at *3; Lerner, 2003 WL 21384645, at *2-3; Fantasia, 2001 WL 34800013, at *3, *6.  In all three of those cases, there was a formal

---

[3] The District also does not deny that it previously argued during the Petties case that the Transportation Administrator was not a receiver.  D.C. Reply at 8-11; see Petties, 2006 WL 1046943, at *4 (stating that the District was arguing that the Transportation Administrator "is not a receiver, but only an administrator appointed by the Court with the consent of the parties").  Rather, the District argues that judicial estoppel does not apply.  While it is unnecessary to resolve the judicial estoppel question here, the fact that the District itself did not consider the Transportation Administrator position as a receiver during the Petties litigation weighs against its argument here that Gilmore was in fact appointed as a receiver.

receivership order that granted the receiver the authority traditionally vested in the Commissioner of Mental Health Services, the Director of Human Services, and the Mayor of the District of Columbia, and the entities under the receiver's auspices could not be held directly or vicariously liable for the receiver's actions because they lacked authority to override the receiver.  <u>Wise</u>, 2005 WL 818622, at *3; <u>Lerner</u>, 2003 WL 21384645, at *2-3; <u>Fantasia</u>, 2001 WL 34800013, at *3, *6. Further, the District fails to argue that the rationale for insulating an entity under a receivership from liability is applicable even when there is not a receivership in place, and thus -- regardless of whether DOT was under a receivership -- the District should be shielded from liability.  Conceivably, if Gilmore retained all authority over the DOT, as the District contends, and he could not therefore be considered an agent of the District, the rationale for insulating an organization under a receivership order from liability may be applicable.  However, the Court will not, *sua sponte*, "resolve [a question] based on an argument that counsel did not raise."  <u>Nat'l Tel. Coop. Ass'n v. Exxon Corp.</u>, 38 F. Supp. 2d 1, 17 (D.D.C. 1998); <u>see also</u> <u>Murray v. Gilmore</u>, 231 F. Supp. 2d 82, 90 (D.D.C. 2002) (dismissing the plaintiff's claim because she "ha[d] simply failed to present the Court with a cognizable legal theory" and "the court is loathe to make arguments for plaintiff at this

stage in the proceedings that she has, as yet, failed to articulate"), rev'd in part on other grounds, 406 F.3d 708 (D.C. Cir. 2005).  The District focuses its efforts on arguing that Gilmore was in fact a receiver, rather than on analyzing whether agency principles justify insulating the District from liability.  Accordingly, because the District has not shown that the DOT was under a receivership at the time of the complained actions -- the predicate for protecting the District from liability under its theory -- the District might be held liable and is not entitled to judgment as a matter of law.

II.  RECEIVER'S IMMUNITY

A court-appointed receiver may be entitled to judicial immunity for the acts the receiver takes within the scope of his receivership when he is being sued in his personal capacity. See Fantasia, 2001 WL 34800013, at *2-3; Murray v. Gilmore, 406 F.3d 708, 716-17 (D.C. Cir. 2005) ("[W]e leave for another day the issue of whether, as Gilmore argues, court-appointed receivers enjoy quasi-judicial immunity in their personal capacity.").  However, contrary to the District's contention, see D.C. Mem. at 10, a court-appointed receiver is not necessarily entitled to absolute immunity.  See, e.g., Murray, 406 F.3d at 717 (permitting the plaintiff to proceed with a Title VII sex discrimination claim against the receiver in his official capacity); Mintz v. District of Columbia, Civil Action

No. 00-0539 (LFO), 2006 WL 1518954, at *2 (rejecting the receivership's claim of absolute immunity because "even judges are subject to discrimination suits, because discriminatory acts are not judicial acts." (citing Forrester v. White, 484 U.S. 219 (1988))).  Furthermore, any receiver immunity that Gilmore may be entitled to is limited to those "acts within the scope of his authority that are basic and integral parts of the judicial function."  Fantasia, 2001 WL 34800013, at *3 (internal quotation marks omitted); see also Mintz, 2006 WL 1518954, at *2 ("[J]udicial immunity only extends to judicial acts.").

    In addition, as the District has not shown that Gilmore was a court-appointed receiver, he might not automatically be entitled to whatever immunity to which a court-appointed receiver might be entitled.  The District does not explore the rationale for granting judicially appointed receivers immunity or how that rationale may apply here to Gilmore, nor does the District explore how the rationale for extending immunity to third parties applies here to the District.  See generally D.C. Mem.; D.C. Supp. Mem.; D.C. Reply.  Indeed, the crux of that immunity question is not, as the District implies, who had authority over DOT at the time, see, e.g., D.C. Reply at 11-12 (emphasizing that the District "lacks discretion to disobey [a receiver's] orders," and that "the DOT for all intents and purposes was run by the Transportation Administrator"), but

whether Gilmore should be entitled to immunity, see Fantasia, 2001 WL 34800013, at *2 (explaining that "'[c]ourt appointed receivers act as arms of the court and are entitled to share the appointing judge's immunity'" (quoting Davis v. Bayless, 70 F.3d 367, 373 (5th Cir. 1995))), what the scope of that immunity is, see Murray, 406 F.3d at 716-17, and, if a receiver is entitled to some immunity, whether the District should be shielded by that same immunity.  These questions are left unanswered by the District's briefing.  See generally D.C. Mem.; D.C. Supp. Mem.; D.C. Reply.

Indeed, the District's discussion of immunity demonstrates that the case law in support of extending a receiver's immunity -- or that of any official entitled to immunity -- to a third party is particularly ill-suited to the inquiry of whether an entity under a receivership order should be held liable.  See, e.g., supra at 12-13.  Rather, as is explained in Lerner, which the District cites, "[while] [c]ourt-appointed receivers are generally immune from suit[,] . . . the question of liability of an entity placed under receivership, such as the District, rather than the Receiver himself, 'is better framed as one of whether an entity placed under receivership can then be held directly or vicariously liable for the receiver's actions.'"

Lerner, 2003 WL 21384645, at *2 (quoting Fantasia, 2001 WL 34800013, at *5).[4]

---

[4] Even if Gilmore was entitled to some immunity -- whether absolute or qualified, and whether in his individual or official capacity or both -- that would not protect the District here. The cases that the District cites to bolster its argument that it should be shielded from liability by virtue of Gilmore's ostensible immunity do not mandate immunity for the District here and are inapposite. For example, the District cites Cunningham v. District of Columbia, which involves a psychiatrist who assisted a parole board in carrying out its duties. See D.C. Mem. at 13; Cunningham v. District of Columbia, 584 A.2d 573 (D.C. 1990). The District of Columbia Court of Appeals concluded that both the parole board and the doctor were entitled to immunity. Cunningham, 584 A.2d at 576-78. The doctor was entitled to immunity because he was an employee of the District of Columbia and he was acting within the scope of his official duties. See id. at 578 n.6 ("[H]e acted at the direction of the parole board, in aid of that board's performance of its adjudicatory duties[.]"). Notably, though the District of Columbia was a defendant in that case through the doctrine of respondeat superior, it was not dismissed by extension of the parole board's immunity. See id. at 574-75 (noting that the trial court correctly dismissed the case against the District of Columbia under the public duty doctrine). Here, the District is not an employee of the receiver, and there is no allegation that the District acted solely at Gilmore's behest. The District oversimplifies the analysis, arguing that all those who assist an officer entitled to judicial immunity should also be protected by that officer's immunity. D.C. Mem. at 13-14 (stating that, like in Cunningham, where the psychiatrist was "required . . . to assist the parole board," the District was required to "cooperate and work closely" with Gilmore, thus it too should be protected by immunity). In Cunningham, the psychiatrist did not merely assist or cooperate with the parole board but in fact acted at the parole board's direction. See Cunningham, 584 A.2d at 577. Even if Gilmore would otherwise be entitled to immunity as a receiver, the rationale for protecting an employee who acts at the behest of an official who is cloaked in immunity is simply inapplicable here.
  Additionally, as is discussed in Fantasia, the act of terminating an employee is protected by immunity only when that termination is not only within the receiver's authority, but

CONCLUSION AND ORDER[5]

Because the District has failed to show that DOT was under a receivership during the relevant period, the District has failed to demonstrate that it should be insulated from liability or that it is entitled to immunity.  Accordingly, it is hereby

ORDERED that the District's motion [137] for judgment on the pleadings or summary judgment be, and hereby is, DENIED.

SIGNED this 21st day of November, 2014.


_____/s/_____
RICHARD W. ROBERTS
Chief Judge

---

also "integral to carrying out the court's order."  Fantasia, 2001 WL 34800013, at *3.  The District fails to show that the plaintiffs' termination was integral to carrying out the court's order.  The District's argument rests instead on the premise that because the District was required under the Petties Consent Order to "cooperate" with Gilmore, the District should be entitled to immunity.  See D.C. Mem. at 13-14.  The District thus conflates Gilmore's authority to terminate the plaintiffs with the centrality of Gilmore's actions to the Petties Consent Order.  Although Gilmore may have had the authority to terminate the plaintiffs, the termination must also be "integral to carrying out the court's order."  See id.  There is no evidence that terminating the plaintiffs was a part of effectuating the Petties consent order.  Indeed, the District does not even discuss the purpose of the Petties consent order.  Thus, the District has shown neither that Gilmore nor that the District is entitled to immunity.

[5] Plaintiffs also contend that the District has waived its immunity argument because the District failed to raise "any immunity defense" when it filed its motion to dismiss.  Pl.'s Opp'n at 6.  Further, the plaintiffs argue that "the District's untimeliness should be considered a waiver of this putative defense."  Id. at 7.  Because the District has not shown that DOT was under a receivership during the relevant period, it is unnecessary to resolve the plaintiffs' waiver argument.